The Honorable, the Judges of the United States Courts of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Courts of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Fourth Circuit, and we're glad to hear argument in our first case, Association for Accessible Medicines v. Frosh. Mr. Lefkowitz. Good morning, Your Honors, and may it please the Court. I'm very privileged to be here to argue today. I represent the appellants. The fundamental problem with HB 631 is that it regulates the price to be paid in transactions between manufacturers and wholesalers of generic drugs, even when both parties to the transaction are entirely outside the State of Maryland. And cases from the Supreme Court, Baldwin and Walsh, and from this — Why do you say that? How is it regulated in an out-of-state transaction? Because the statute, by its definition at Section 2802, says the only thing that is unlawful is for a manufacturer or a wholesaler to engage in price gouging in the sale of an essential off-patent or generic drug. And then there is a carve-out for wholesalers. They're not liable if they're just passing on the price of a manufacturer. And the affidavits in this case, and it's not challenged, establish that the manufacturers, over 95 percent of the sales of manufacturers of drugs do not take place in the State of Maryland. We are only challenging the statute in as much as it would be applied to those out-of-state transactions. Does the statute apply unless there's a downstream sale at some point in Maryland? They assert that it does. And for purposes of the argument, although I think the statute could be read to apply to just invalidate the entire transaction in all respects, I would accept that they only intend for the statute to apply when the drugs eventually make their way downstream. But the Supreme Court has made very clear — Isn't that sort of the gist of where we're going with that? I mean, that's the only thing they're intending, and you're trying to establish this is wholly outside the State. And that's correct, Your Honor. I'd like to — there are two cases that the Supreme Court addressed that expressly addressed that issue. The first is the Healy case, where it made clear that regardless of whether the statute's extraterritorial reach was intended by the legislature, if what it is actually regulating is an out-of-state transaction, if it is setting the terms and conditions of a commercial transaction outside the state, that's invalid. And the Baldwin case is even more — I believe the Healy case, because isn't that case somewhat limited? I mean, you're dealing with out-of-state sales products for resale of out-of-state. And that's not the instance here. No, we're — actually, what we're dealing with here is exactly what the Supreme Court — what this Court recognized the Supreme Court precedent stood for when it wrote the Carolina trucking case. The Baldwin case actually deals with products that were 100 percent intended for New York. In fact, unlike these products, where only a small portion of the sale, when a Philadelphia manufacturer sells to a California wholesaler, only a small segment of those drugs may make it to — They're selling in Baldwin. Is that the milk case? Yes, that is the milk case. And what New York tried to do was to say that a transaction for milk that took place entirely in Vermont — But it's not like this case. It would affect it just — it would affect the prices in other states. If they didn't want Vermont and other states, you'd be telling them how to price it because it said if you lower it there, you're going to have to lower it here and set a time limit on it, too. Oh, no, Your Honor. I respectfully — I think what you're referring to are the price affirmation cases like Brown-Forman and Healy. In Baldwin, the — It's easier to get them mixed up. We ought to write that together. Thank you, Your Honor. But in Baldwin, the only issue was New York cared about the price of milk sold in New York, just the way Maryland claims it cares about the price of drugs sold in Maryland. But what the statute that the Supreme Court said was unlawful said that when someone went and made a purchase of milk in Vermont, even though all that milk was intended for the New York market, that transaction in Vermont violated New York law. And what the Supreme Court was clear about, and this court recognized that doctrine in Star Scientific, and it recognized it more recently in the Carolina trucking case, was states simply don't have the ability to exercise their sovereignty with respect to actual transactions. Your Honor, in the three months since the law has been in place, how many enforcement actions have there been against members of your court? There have not been any enforcement actions yet, Your Honor, and I don't know whether that's because in light of the litigation and the concern with respect to the statute that Judge Garbus found, not with respect to the Commerce Clause, but with respect to the language of the statute, whether they're simply holding back. So what does that do to your injunction argument? I don't think it does anything really to the injunction action, the injunction argument, because we are in a very unsettled place right now because they are threatening. They've made it clear that they are investigating. They are planning to bring enforcement actions. And so I think all of the concerns are the same. But what's going on here? Why don't you get it? Sure. We're all talking the same stuff here. Sure. In terms of what these facts are. Sure. And why Maryland has this statute. As I understand it, it's because there is a drug that has become generic. And this drug, certain drugs are being targeted by certain types of investors and certain people. Am I wrong on that? And then they take these drugs because they are targeted for like rare type diseases of things. And they increase the prices of them like 2,000 to 3,000 percent. Why can't Maryland protect its citizens who have rare diseases in buying these drugs? I mean, you could start with $30 for a drug and it looks like to me you could end up with 3,000. Why come Maryland can't do that? Your Honor, Maryland absolutely can. How? It can do it in several ways. First of all, it could simply pass a law that says no drug may be sold in the state of Maryland that has an increase of more than 20 percent or 10 percent over the prior year's price. It could simply pass that law. And anybody who sells a drug in Maryland would have to obey that statute. So it could absolutely do that. Another thing it could do is what the Supreme Court in the Walsh versus Pharma case approved, which says any drug company that sells drugs in the state has to offer a rebate to the state so that everybody in the state buys the drug at the Medicaid price. In other words, the one thing it's not allowed to do. Maryland is listening to you. Your Honor, I'm not sure my clients would be very happy with some of these alternatives, but they wouldn't be unconstitutional. And that's the critical thing. What Maryland has done is it has said, look, we want to exempt our retailers from the force of this regulation. We even want to exempt for the most part wholesalers who sell into the state. So within the entire chain, if they were to pass a proper constitutional law and simply say you can't sell a drug for more than $100 or for more than a 20 percent or a 50 percent increase or anything that was lawful in the state, what would happen through the market is the retailers and the wholesalers and the manufacturers would all have to make certain price concessions because all of them are profit-oriented businesses that try to make money along the way. The reason this violation of the statute is that it's not a violation of the state's because it would seem like the manufacturer could make a sale in any of the 49 other states at whatever price they wanted to make it, and that would not be regulated by the Maryland statute unless there was a later transaction, which would seem to be covered by a distribution agreement. But the distribution agreement doesn't involve the manufacturer. The way that the industry works is a drug company, take a New Jersey drug company, sells drugs in bulk to big buying wholesale companies. There are a bunch of them around the country. None of them happen to be in Maryland. One of the largest ones is in California, so take that sale. It's a sale from New Jersey to California. Then the California company sets its prices and sells downstream, but that transaction is not the subject of this regulation. The only transaction that realistically is subject to this regulation, to this law, is the first transaction, and that is an entirely out-of-state transaction. They set whatever price they want in that transaction? I would assume they should be able to constitutionally, but Maryland says under this statute, and they acknowledge this at page 14 of their brief. They actually say at page 14 of their brief, yes, it, quote, technically, that's their word, reaches out-of-state sales between manufacturers and wholesalers. I thought you already told us that for purposes of this argument, you were accepting the premise that unless there was a later sale in Maryland, the statute did not apply. No, Your Honor. What I said was they say that they will not enforce penalties unless there is a later sale in Maryland, but the later sale is not a sale of our clients. In other words, the later sale that they are going to then penalize is a sale between other parties. The only sale that our companies make, that the manufacturers make, that we are challenging are sales that take place entirely outside of the state. How is that different from Star Scientific? It's very different in a critical way. In Star Scientific, the state was basically saying if the tobacco, if the cigarettes are sold ultimately in the state of Virginia, then we are going to collect a fee, an escrow, so that when we, the state of Virginia, have to pay damages in potential product liability cases, we'll have the money. It did not in any way say that the sale between the South Carolina manufacturer and the Georgia distributor was unlawful under Maryland law. It was completely agnostic as to those prices. It nevertheless regulated within the state. And the Supreme Court in the Walsh v. Pharma case, which is the most recent extraterritorial case that the Supreme Court has decided, did two very important things. Number one, it relied on the doctrine from Baldwin and from Healy, and then it distinguished between two parts of the Maine law. And this is, I think, the most critical point I can make. Maine had two different provisions, a provision just like this one, which was struck down under the Dormant Commerce Clause, and then a provision more like Star Scientific that just required a rebate for actual in-state sales. And what the Supreme Court said is Maine does not, the Maine Act does not regulate the price of any out-of-state transaction. Maine does not insist that manufacturers sell their drugs to a wholesaler for a certain price. That's why the rebate was constitutional and the anti-profiteering or the anti-gouging statute in Maine was unconstitutional. And, in fact, it was unconstitutional at the district court. It wasn't even appealed. But when the Supreme Court wrote its decision, it distinguished, and this is at 669 of the Walsh opinion in the Supreme Court, and it makes the very point that this court made in Carolina Trucks, where in the Carolina Trucks case, the court said, we are only going to read that statute to relate to in-state transactions to the extent that there is a reading of the statute that involves declaring invalid a transaction that takes outside of the state of Carolina, it would be unconstitutional under the Dormant Commerce Clause, and therefore we have to have a saving construction. But in this statute, there is no saving construction, because if you read the statute, it simply says a manufacturer may not engage in price gouging in the sale of an off-patent drug, and the sales that are at issue in this lawsuit are out-of-state sales. And I just want to reiterate, there are a lot of things that Maryland has the authority to do. I agree, Your Honor. There are some obviously terrible examples that we've seen in the marketplace. This gentleman, Shkreli, is properly in jail. I would point out that he is actually not a manufacturer of generic drugs. He had a one-off off-patent drug. But the bulk of something like 70% of all prescriptions in America are actually filled by low-cost generic drugs. The ibuprofens and the antibiotics and all of the drugs that we take are sourced usually by many, many different companies, and these are sales that take place out-of-the-state. But that doesn't mean Maryland can't fulfill its objective, which is to bring prices down. It just has to do it in a way that the Supreme Court and this Court has said is lawful by regulating in-state. Does it make a difference that this statute does not say that these drugs have to be sold for a certain price? They simply say the price cannot be unconscionable. It doesn't make any difference as to the Dormant Commerce Clause because the question under the Dormant Commerce Clause is where the state is imposing its restrictions or its regulation, within the state or outside of the state. It does make a difference with respect to our vagueness challenge, and the state makes a big deal of saying, well, we've just set the term here as unconscionable, and the truth is if all they had said was unconscionable, I think it would be a much harder case for me because we have a conventional meaning of unconscionable. It means shocks the conscience. What they've done is they've compounded the problem because they've defined unconscionable with subjective terms like excessive, not justified, and they've even applied it in the case where there are three different competitors in a marketplace, which by definition is a competitive marketplace. So I think it is relevant, Your Honor. It's relevant to the vagueness challenge, but on the Dormant Commerce Clause challenge, the only focus for this Court is really, does the transaction they want to regulate take place entirely out of state? Thank you, Mr. Lefkowitz. If you've got some time left in rebuttal, Mr. Auerbach. Thank you, Judge Agee. May it please the Court. The state law... Why don't you clarify right from the beginning? Is it Maryland's position that this statute can apply to a transaction in another state  Yes, Your Honor. I think that's a good question. downstream transaction in Maryland. The statute is triggered by an in-state consumer sale, and it regulates in-state consumer sales. Where is the language in the statute that makes it clear that it's only triggered by in-state consumer sales in Maryland? There are two provisions that I think make it clear. The definition of essential drug includes made available for sale in Maryland. Well, but made available for sale in Maryland doesn't mean only for sale in Maryland. Made available for sale in Maryland could also be they're selling it in West Virginia, they're selling it in California. That's a problem, isn't it? The other provision that we rely on is the provision that talks about liability attaching, even if the party that engaged in the act did not sell the drug directly to a consumer in Maryland. I think it's clearly implied in that as there must be a sale to a consumer in Maryland. I'm looking at the statute in the Joint Appendix, so which specific section do you say that is? It is... I'm sorry, don't show it. There's a provision that is based on Maryland antitrust law. Essentially it's the same words as Maryland antitrust law. And it says... Can you give us a cite to the particular statute in this bill? I'm looking at pages 370 to 375. 374 of the appendix, which I assume is this statute. Yes, and I just wish I had remembered where exactly it is in the statute. That would seem to be a pretty important distinction to make because if it does have this out-of-state... I'm sorry, it's the very last. It's the very last provision of the statute. In any action brought by the... This is on JA 48. In any action brought... JA 48? Yes. Okay. A person who is alleged to have violated a requirement of the subtitle may not assert as a defense that the person did not deal directly with a consumer residing in the state. A person who has violated a requirement... So I think I have one more point on this question. There's a Seventh Circuit case... Section G. Section G. There's a Seventh Circuit case called KS Pharmacies in which Judge Easterbrook wrote for the Seventh Circuit... Well, that goes to establishing something that can't be a defense, but that doesn't go to the overall jurisdictional reach of the statute. Well, I think it implies that there must be a sale to a consumer in the state because it notes that it may be indirect sale to a consumer. If we're talking about a statute implies this, that, or the other, isn't that the definition of vagueness? Well, I think... You're having to look at something that implies, and it's the very last section, and it's about a potential defense. Well, this is not there, first of all, I think, made available for sale in the state. I understand Your Honor's point that that could be better written and make it more clear that it's not... Well, you actually say it's technically accurate. Opposing counsel is correct. That's what your point is. Well, that's a different point, Your Honor, if I may. What we say is that it's technically accurate that the conduct that violates the statute could manifest itself in a wholesale transaction that occurs out of state. That's actually what we said, and that was true to the very same extent in Starr Scientific. The headline point here is that upstream impact is okay. That's what this court said in Starr Scientific. That's what the Second Circuit said in Sorrell and Freedom Holdings. We've cited cases from the First Circuit, the Sixth Circuit, the Ninth Circuit, the Tenth Circuit. I guess what I'm still looking for in this statute is the provision that says we do not have the authority to bring an action under this statute until there is a sale in Maryland, and that's what I'm looking for in the statute because that would seem to be the linchpin of whether or not it reaches out of state. That precise language, Your Honor, does not appear in the statute. That is the way that we think the statute should correctly be interpreted. It would be interpreted by the Court of Appeals in Maryland, and in KS Pharmacies, the Seventh Circuit confronted this precise question, and it said what's the point of interpreting a statute broadly when it would raise constitutional questions, and in this precise context, it interpreted the statute at issue in that case to only The reason it did so is because you ought to look at statutes and not find constitutional problems. You ought to try to see if there's a constitutional way in which it exists, and in this instance, if the heart of the issue is sale to consumers in Maryland and we're dealing with a facial challenge, we don't know that this statute applies to resales outside of Maryland. That's right, Your Honor. That's exactly right, Your Honor, and moreover... I was wondering why you didn't go there with that. I mean, in terms of putting in that vein, I mean, you can look at this statute, you can analyze it and pick it apart, but really the essence of it is that you've got to look at it in a vein to say that this is constitutional, how do we read this to be constitutional, not how do we read it to be unconstitutional. That's exactly right, Your Honor, and we certainly think there's language in the statute. Could it be more precise on this point? We'll concede that it could be, but there's certainly language in the statute on that kind of a limiting construction. The court found it necessary to do that. It could be based. The Court of Appeals of Maryland has said that Maryland statutes that are being interpreted not to be unconstitutionally extraterritorial. That's a principle of statutory construction that ought to be applied here if this court were to construe the statute. Tell me about Carolina Trucks. Isn't that what was done there? So I think I first want to say Carolina Trucks is a quite different case. In Carolina Trucks, the state purported to regulate transactions that had no connection to the state, except that one of the parties to the transaction was a resident of the state. That would be like the state of Maryland saying, Maryland resident, you can't go to Pennsylvania or Virginia and buy drugs at the price that they're available for there, and that's completely different than what's at issue here. This is a statute that regulates in-state consumer sales, but that recognizes that unconscionable price increases, the source of unconscionable price increases, may be upstream transactions between wholesalers and distributors. That's the reason for the not deal directly with the consumer in Maryland. You argued prior to now that in order for the statute to be valid, we have to give it a limiting construction. Our position is that that's not necessary, but I would say in the district court where the manufacturer is more aggressively asserted that this applies everywhere, we did say that. In our understanding, I think Mr. Lefkowitz conceded this, that for purposes of this case, they accept that the statute only applies with respect to consumer sales in Maryland. So I think we were more explicit with that point in. Who accept? You think opposing counsel would accept that it only applies to consumer sales in Maryland? I think he accepted at the beginning of his argument that it does not purport to regulate consumer transactions in California or Virginia. I think that's the point. In my understanding, that's the point at issue here. Well, that's what I thought he said, too, and then I asked him again and I thought he went the other way. Maybe so. You're all asking again. Maybe so. I think we don't feel that a limiting construction type holding is necessary given the language in the statute, but we don't object to one if this court feels that it's necessary to make it, to interpret the statute, to apply only when there's an in-state consumer sale. I thought the whole case that AAM is concerned about on resales in Maryland, I thought that's what this case is about. The drugs being resold in Maryland. Correct. Not what's going on in other states. Correct. This is a statute, the intention of which is to protect Maryland patients from price gouging, from massive unjustified increases in the price of certain essential medicines where market competition has been insufficient to restrain that conduct. So how is Maryland affecting the resale of drugs in other states? It is not. Not in any sense. Not the intent of the statute, not the function of the statute. And to the extent that it has any kind of effect, it's because the manufacturers say they don't have a distribution system today that lets them figure out where their drugs are going or control where their drugs are going. And the Supreme Court said in Exxon versus Maryland, the Ninth Circuit said in the Foie Gras case, the Second Circuit said in Sorrel, that the happenstance of the current distribution system and industry has no significance when it comes to dormant commerce clause analysis. So I think a further point, important point here is this law applies only where there's price gouging, where there are price increases that shock the conscience. So in the ordinary case, unlike Star Scientific, which every time an out-of-state manufacturer sells to an out-of-state distributor a cigarette intended for sale in Virginia, there is an escrow fee imposed. Which issue are you on now? Dormant clause or the maintenance one? Dormant commerce clause. It affects every transaction. This statute applies only where there's an unconscionable price increase. In Star Scientific, this court held that the Commonwealth of Virginia, without infringing dormant commerce clause, could impose a two cent fee on each cigarette sold by an out-of-state manufacturer to an out-of-state distributor if the cigarette was intended for sale in Virginia. And it used the word indirect, the nature of the regulation was to reach indirect sales into Virginia. That's exactly the same in this case. In addition, the manufacturers don't acknowledge, but the other provisions of the escrow statute provided for the Attorney General of Virginia to obtain an injunctive relief against a manufacturer, including an out-of-state manufacturer, that did not comply with that statute. And it provided for the imposition of civil fees and penalties for manufacturers, including out-of-state manufacturers, that did not comply with the escrow fee statute. So we're talking about the same regulatory interventions that are at issue in this case. The extraterritorial impact in Star Scientific was of the same character. Again, this statute is much narrower in its impact, but of the same character as the impacted issue here. Because of the Virginia escrow fee statute, out-of-state manufacturers had to decide whether to sell cigarettes intended for sale in Virginia to out-of-state distributors, and if so, on what terms. They had to build into the cost of those transactions the escrow fee, the escrow fee that Virginia was imposing. And again, if manufacturers didn't comply with those provisions, they could lose the ability to engage in those transactions altogether. Distinguish, if you will, the points made in the main and the D.C. cases on this. The D.C. drug pricing case. So, first of all, it's a district court decision. It was not appealed. And I think I'm going to be straightforward in saying that I think our main response on that point is that we think it ought to be regarded as not persuasive because it preceded most of the case law we're talking about here that recognized that upstream impact is permissible impact under the Dormant Commerce Clause. There were elements of it that may be significant. There were elements of that statute that may be significant for Dormant Commerce Clause purposes, too. For example, there was a price tying mechanism in that statute that tied, in some sense, the price in D.C. to international prices. And that, of course, is a trigger under the Healey, Baldwin, and Brown-Forman line of cases that the manufacturers here miscite. But I think in the main, our position is that the judge in the D.C. case did not recognize, as this Court recognized in Star Scientific, that upstream impact is permissible. On the vagueness point. Well, the district court said that I can't figure this out yet. I need to do some discovery. And neither party seems to really join that particular issue. What's wrong with that? This is a facial challenge, and we move to dismiss the facial challenge. That's still our position. We believe it could be resolved without discovery, and the law can be. Facial challenges are generally disfavored, partly because you have a fair bones record. I mean, how does the district court abuse its discretion by saying, I need to know more before I can decide this? Well, we have an appeal from that ruling, Your Honor, and we intend to participate, obviously, in proceedings in district court. And it may well be that a more developed factual record will be of some assistance to the district court. Our position is, particularly because it's a facial challenge, it should be dismissed. The manufacturers have really completely, I don't know that the case law uses this kind of language exactly, but they've flipped the burden. They've attempted to flip the burden that a challenger has in a facial challenge. And what this court said in Schlieffer is, we know there are going to be hard cases, but that's not what you do in a facial challenge. It's incumbent on them to explain why the law could possibly be vague in an easy case. And the court, there was some discussion with Mr. Lefkowitz about the facts of the basic framework of an easy case. A manufacturer walks into his lawyer's office and says, I have this life-saving drug. It treats a chronic condition. Once you start taking it, you take it for the rest of your life. And we've been charging $2,000 a year for it for the last 20 years. Tomorrow I'm raising the price to $100,000 a year. And there's been no change in our production costs. There's been no change in anything material to our pricing decision. And I know that some of our patients don't have insurance. And I know that some of our patients have health insurance with high deductibles. And this may in some way impact their access to the drug. But I don't care about that. Now if that manufacturer and that lawyer can't figure out how the Maryland law applies to that conduct, it's not because the Maryland law is vague. It's because they don't have a conscience or because they left their conscience at home that morning. I know there's a little bit of a rhetoric in that. But I think the unconscionability doctrine stands for the proposition that there is a conscience in law and that judges articulate the community conscience. Well, in this case, the legislature has supplanted the common law of unconscionability because it includes a definition for unconscionable in the statute, which has several terms in it that may be classified as elusive. Our position, Your Honor, just to be very blunt about it, we strongly disagree with that. The best known articulation in American law of the unconscionability doctrine is Judge Skelly Wright's decision and Williamsburg. There's no doubt there's an unconscionability doctrine, but there's also a strong canon of construction that when a legislature acts in derogation of a common law, the legislature has replaced the common law to the extent that it is adopted its own definition. I understand, Your Honor. The point is the definition of the legislature used is a mirror, is a mirror of Skelly Wright's articulation of the common law doctrine of unconscionability. The courts have said there's a procedural component and a substantive component. This statute has two prongs, one of which mirrors the procedural component, one of which mirrors the substantive component. The procedural component says we're concerned when consumers and parties to the transaction have no meaningful choice. The legislature here said we're concerned when consumers have no meaningful choice. The substantive component says we're concerned when the terms, including the price terms, term would be unreasonably favorable to one party. Here the legislature used the word excessive instead of unreasonably favorable. Moreover, in the legislative history, there's a letter from the Attorney General to the legislative committees. The Attorney General was an advocate for this bill. And in explaining the terms of the statute, he cited Williams v. Walker, Thomas, is absolutely the intent of this law to adopt for a particular application the common law doctrine of unconscionability, including its standard of shocks the conscience. So I want to be very assertive on that. And the fact that they say it doesn't, well, they just haven't read it carefully enough. Same on the point of market competition. The statute clearly says it applies only in circumstances where there's been insufficient competition. And that competition has been insufficient to restrain the price increases. And the statute says that, and I think just denying that it says that doesn't get them anywhere. So this is a statute that attempts to address a real problem. It does so concededly having impact on potentially on upstream transactions. That's permissible under SNAR scientific. It adopts the common law doctrine of unconscionability, which has not been found to be vague and which is not. Thank you. Thank you very much. Mr. Lefkowitz. Thank you. And if I may, I'd like to clear up the one bit of confusion here. We never conceded that the statute applies only to sales in Maryland. What we said was, because after all, that's the essence of our suit. What we said was it only applies when drugs are in Maryland. And of course, if it didn't apply then, we'd have a due process challenge as well as a commerce clause challenge. It only applies when drugs are resold. Well, we don't have reselling because we are not resellers. We sell to wholesalers. Wholesalers who are different companies, Fortune 50, Fortune 100 companies. Has the statute affected the price of drugs in any other state? Well. Outside of Maryland? It is. It's not a question of whether it affects the price. The question, and Baldwin makes this clear, is if it simply says that a transaction that takes place in another sovereign state is unlawful under Maryland law, when it would be lawful in that state, that's unconstitutional. Are all the wholesalers in states outside of Maryland? Correct. So everything that your client does is outside the state. With the exception, as we've pointed out, of some sales, it's a couple percent of the sales they make directly into Maryland, and those can be regulated. But when they talk about the upstream effects, it's absolutely correct that when a state properly regulates within the state, like in Star Scientific, when they're just assessing a fee based on a per use or the rebate in Walsh, it can have a lot of strong upstream effects, and the Constitution doesn't protect against that. That's the difference. Judge, when I asked counsel for Maryland, how is it that Maryland is affecting the sale of drugs in other states? Can you answer that? Sure. Because when a New Jersey drug company sells drugs in California, that is a sale of drugs in another state. It may not be a sale to a consumer, but it is a sale to another entity, and Maryland is saying that that sale is invalid. And we talked a little bit during that argument about saving. Why do you say that? Because, Your Honor, I would be thrilled if this court would simply come up with a limiting construction and say that no out of ---- Explain what you just said. Sure. Because that, I apologize, Your Honor, that is what's declared invalid. The only thing that this statute actually says is invalid, that our clients do, is enter into a transaction that is out of the state of Maryland. So if the court adopted a limiting construction for this statute that requires as a condition precedent that there be a downstream sale in Maryland, you're happy with that? If it required a downstream sale in Maryland by the person against whom the statute would penalize, correct. But, again, the statute I don't think is actually available for that limiting construction because 803B specifically says a person who is alleged to have violated this statute can't assert as a defense that he didn't have a transaction with someone in Maryland. So I don't think like in the KS case that Judge Easterbrook decided with Wisconsin or the Carolina trucks case, it is susceptible of that, although that would certainly be a victory for me if the court adopted that. This is like the Sam Francis case that the Ninth Circuit just decided en banc a year and a half ago in which it said there is no alternative construction because the statute on its face regulates the terms of a transaction outside the state. And, again, if this were like star sign. You say that is irregardless of whether there's a later sale in the state of Maryland. Yes, because it's not, the company they want to penalize is not ever making a sale in Maryland with respect to what we are challenging. I understand that if the New Jersey manufacturer does make a small number of sales to a hospital in Maryland, that is subject to this statute whether we like it or not. But they are not making later sales. If they sell to a big company, Cardinal or McKesson in California or in Ohio or Indiana, that's the sale that they want to penalize. And that is simply beyond the boundaries of the Commerce Clause. And this court has made clear in the Carolina trucks case and in the star scientific case what the boundaries of extraterritoriality are. And the only times when states can regulate or when they are regulating the in-state transaction, they certainly can regulate in-state products as much as they want. The one thing that they cannot do is exercise their sovereignty to say that something that is lawful in another state, a transaction, the price of a transaction is nevertheless unlawful under Maryland law. But it is not saying, Maryland is not saying that that sale is invalid. It's only saying that to the extent that some of these drugs are resold in Maryland, then for those specific drugs it is unlawful for the upstream sale to be unconscionable. But that, and that is precisely what Healy and Baldwin say is. I do agree. They're not saying it's invalid, that the sale is not invalid. Well, they're penalizing it. They are saying it's invalid. They're saying it's unlawful. In fact, the statute says the sale is unlawful. So yes, Your Honor, I would respectfully, very respectfully disagree. They are saying that that out-of-state transaction is unlawful. And the only way they're trying to. The extent that they are sold in Maryland. But they're not sold by the company that they are targeting. And that's the critical distinction. In Star Scientific, they were simply assessing a fee to the producer, to the manufacturer, whose drugs were, whose tobacco was sold. They are free to do something like that as the main state did in the case that was approved in pharma. What they're not allowed to do is the other part of the main decision, which was struck down. Because they don't, the statute doesn't directly say that it applies to drugs actually sold in Maryland. It says made available for sale in Maryland. Even if it said sold in Maryland, the issue would be who is selling in Maryland. Retailers sell in Maryland, so retailers could be subjected to this. Wholesalers sell in Maryland. But unfortunately, and it's not that Maryland is without recourse. Maryland could simply pass any number of laws that we might find very draconian. They could say no one can sell in Maryland that does it for any price other than the Medicaid price. Or no one can sell for more than $10 a prescription. We wouldn't like that, but it wouldn't violate the Dormant Commerce Clause. And it would require everyone in the chain, the in-state retailers, the out-of-state manufacturers to negotiate a solution, as opposed to exempting the in-state retailers from the thrust of the statute to only regulate outside the state. Thank you very much, Mr. Leff.
judges: G. Steven Agee, James A. Wynn Jr., Stephanie D. Thacker